[Civ. No. 40027. First Dist., Div. Three. July 12, 1977.]

PACIFIC AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Respondent, v.
PAUL WOLFF, Defendant and Appellant.

Budd E. MacKenzie for Defendant and Appellant.

Haims, MacGowan & McInerney, Arnold B. Haims and Russell W. Taylor for Plaintiff and Respondent.

## OPINION

**SCOTT, J.**—Paul Wolff appeals from summary judgment granted to Pacific Automobile Insurance Company (Pacific). Pacific by its complaint sought a declaration that an assigned risk policy of automobile liability insurance issued to Wolff had been properly cancelled at the request of Central Bank, N.A. (Coast Program) pursuant to the provisions of Insurance Code section 673.

On or about June 3, 1974, appellant's wife contacted their insurance agency (Bailey, Bowers & Elson) for the purpose of obtaining an assigned risk policy of automobile liability insurance for her husband through the California Automobile Assigned Risk Plan. She requested that the premium be financed. On the same date, an application was made to the California Automobile Assigned Risk Plan to obtain

automobile insurance for appellant. An "Insurance Premium Financing Installment Note, Security Agreement and Disclosure Statement" (Agreement) was prepared for the purpose of financing the premium through Coast Program, a division of Central Bank, N.A. The Agreement bears the signature of Wolff, but was in fact signed by an employee of the insurance company.

It is acknowledged that the agency was authorized by Wolff's wife to obtain insurance for him. The Agreement provided that as security for the loan the borrower, i.e., Wolff, assigned the insurance policy to the bank, "including, without limitation, all rights to cancel said policy." In addition, the borrower appointed the bank as his attorney-in-fact to execute any documents for cancellation of the policy. It was further agreed that any default in payment of the installments would be deemed to be an election by the borrower for cancellation of the policy, and that in such event the bank was authorized to transmit to the insurer notice of this election.

Thereafter, the California Automobile Assigned Risk Plan assigned the risk to respondent Pacific, and Pacific issued to appellant Wolff an assigned risk policy of automobile liability insurance for the period June 6, 1974, to June 6, 1975. Appellant failed to pay the installment due on August 5, 1974, and on August 12, 1974, Coast Program sent a "Notice of Exercise of Right to Cancel," stating that if payment was not received by August 24, 1974, the insurance carrier would be instructed to cancel the policy. On August 25 or 26, 1974, Coast Program mailed a "Confirmation of Cancellation" to Pacific, instructing Pacific to cancel the policy of insurance on the date specified, i.e., August 24, 1974.

Appellant was involved in an automobile collision on August 27, 1974, in which the car he was driving collided with one driven by Gilbert Hobbs. Hobbs filed suit against Wolff. Pacific then commenced the instant action. The parties agree that there is no triable issue of fact; therefore, if respondent's contentions as to the applicability of the law are correct, it is entitled to summary judgment. (Code Civ. Proc., § 437c.)

■ I. Cancellation of policies of insurance when the premiums are financed is governed by the provisions of Insurance Code section 673.* The statute provides that the lender's (here Coast Program) instructions to cancel are conclusive for all purposes with respect to the insurer. (See § 673, subd. (i).) Thus, once the lender has instructed the insurer to

---

*All statutory references are to the Insurance Code, unless otherwise indicated.

cancel, the cancellation is effective. The transfer or assignment of the insured's right to cancel an insurance policy to the lender must be in writing "executed by, or on behalf of, the insured." (§ 673, subd. (a).)

Appellant does not contend that the lender, Coast Program, did not follow the proper procedures for effecting a cancellation of the policy. Rather, he argues that the lender was not properly authorized to cancel the insurance in that there was no valid transfer or assignment of the right to cancel. Appellant's argument in this regard is premised primarily on the fact that the premium financing agreement was not personally signed by him, but was signed by an employee of his insurance agency. He asserts that his insurance agent was authorized only to obtain the insurance and financing, not to cancel the policy. Appellant relies upon a series of cases holding that "an agent authorized to procure insurance is not thereby made the agent of the insured to cancel a policy." (*Hooker* v. *American Indemnity Co.* (1936) 12 Cal.App.2d 116 [54 P.2d 1128].) The holdings in *Hooker* and other cases cited by appellant are inapposite in that in those cases there was no authority given to the agent to cancel, whereas under the present circumstances, the authority is specifically granted by statute.

The principal thrust of appellant's argument is that since he did not personally sign the Agreement, it was ineffective to assign the right to cancel. However, section 673 does not require that the insured sign the Agreement. It may be executed on his behalf by another. Section 673, subdivision (a) was amended in 1973 to permit the written assignment or transfer of the right to cancel the policy to be *"executed by, or on behalf of, the insured."* Prior thereto, the section had required the right to cancel be transferred *"by the insured in writing to a lender."* The change in the section evidences a clear legislative intent to modify the prior requirement that the insured personally sign the document transferring the right.

II. Appellant also contends that the oral authorization given his insurance agent was insufficient to effect a valid transfer of his right to cancel under Civil Code section 2309, which requires that "an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing" (the so-called equal dignities rule). The contention is that since the transfer of the right to cancel must be in writing pursuant to section 673 subdivision (a), the authority of the agent to enter into such contract must also be in writing. The contention is not well taken because section 673 specifically permits the transfer of the right to cancel to be done *on behalf* of the insured. The only writing

required by section 673 is of the assignment itself. As a special statute dealing with a particular subject, section 673 takes priority over the general statute. (Civ. Code, § 2309; *Mitchell* v. *County Sanitation Dist.* (1958) 164 Cal.App.2d 133 [330 P.2d 411]; *Estate of Compton* (1962) 202 Cal.App.2d 94 [20 Cal.Rptr. 589].)

III. Appellant next contends that Pacific was obligated to reinstate the insurance coverage under the laws governing assigned risk insurance. On September 6, 1974, Pacific received a notice from Coast Program requesting reinstatement of appellant's insurance policy. By a letter dated September 13, 1974, Pacific indicated that it was unable to comply with the request because the policy had already been cancelled, effective August 24, 1974.

Reliance is placed on California Administrative Code, title 10, section 2470, which provides that the insurer under an assigned risk policy may cancel the policy in accordance with its terms and conditions, but must first obtain prior written approval from the manager of the assigned risk plan. On this basis, it is asserted that respondent had no authority to refuse the request for reinstatement without obtaining the approval of the plan manager.

Section 2470, however, applies to cancellation by the *insurer*; here, the cancellation was upon the instruction of the lender. Furthermore, section 2470 does not apply where the cancellation is due to default in the payment of the policy premium. Section 2471 of title 10 of the Administrative Code, which applies to cancellations for default in premium payments, has no requirement for obtaining the prior approval for cancellation from the manager of the assigned risk plan.

IV. Appellant next contends that the notice of cancellation sent by Coast Program constituted an anticipatory breach of contract which was withdrawn (apparently by requesting reinstatement) before respondent changed its position in reliance thereon; hence, respondent could not refuse to accept withdrawal of the notice of cancellation. The argument is without merit, inasmuch as there is nothing to indicate that the cancellation instruction by Coast Program was in effect an anticipatory breach of contract. No authority is cited in support of this assertion, and the record demonstrates that Coast Program was merely exercising its rights under the financing agreement when it sent the notice of cancellation to the insurer.

V. Appellant finally argues that since respondent had on a prior occasion reinstated his policy, it was bound to do so on this occasion. No authority is cited for this proposition, but appellant claims that permitting an insurer to reinstate on one occasion and to refuse on another "presents a serious danger to the public."

Appellant essentially argues that since he had defaulted in the past and the policy had been reinstated, he could reasonably expect that the insurer would reinstate his policy after a subsequent default. However, according to appellant's statements in the record, he was totally unaware of the prior cancellation and reinstatement and admittedly could not rely on those notices. Hence, the argument is without merit.

Judgment is affirmed.

Draper, P. J., and Good, J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.