[No. B133614. Second Dist., Div. Seven. Sept. 27, 2000.]

JACK KOTLAR, Plaintiff and Appellant, v.
HARTFORD FIRE INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of James Osborne & Associates and W. James Osborne for Plaintiff and Appellant.

Ropers, Majeski, Kohn & Bentley, Todd A. Roberts and Ralph Tortorella for Defendants and Respondents.

**OPINION**

**JOHNSON, Acting P. J.**—In this action for breach of contract and negligence, plaintiff Jack Kotlar appeals from the judgment in favor of defendants

after the trial court sustained a demurrer to his third amended complaint without leave to amend further. We reverse the judgment and remand the cause to the trial court with directions.

FACTS AND PROCEEDINGS BELOW

In substance, the complaint alleges as follows:

Jack Kotlar leased commercial property on Pico Boulevard in Los Angeles to Meir Sharvit doing business as Meir Produce (Meir). Under the lease Meir agreed to maintain liability insurance for the benefit of Kotlar.

Meir purchased a commercial general liability insurance policy from Hartford Fire Insurance Company (Hartford), naming Meir and Kotlar as insureds. Subsequently Kotlar received a certificate of insurance informing him he was named as an additional insured on the policy. This same document contained a provision in which Hartford promised it would "endeavor" to give Kotlar 30 days' advance notice of cancellation of the policy.

The policy was to be effective from September 22, 1994, to September 22, 1995. However, at some time prior to the scheduled expiration date, Hartford canceled the policy because Meir failed to pay the premiums. Hartford sent notice of its intent to cancel the policy to Meir but not to Kotlar. The brokers who sold the policy to Meir also failed to provide notice of cancellation to Kotlar. Kotlar alleges he was unaware the policy had been canceled and that neither Hartford nor the brokers made any effort to notify him of the cancellation before it occurred.

After the policy was purportedly canceled, one of Meir's customers slipped and fell on the property, suffering a fractured hip. This resulted in a lawsuit in which Kotlar was named as a defendant. Kotlar tendered defense of the action to Hartford, which refused to defend or indemnify Kotlar on the ground the policy had been canceled for nonpayment of premiums prior to the accident.

Kotlar then brought this action against Hartford and the brokers, TriWest Insurance Services, USI Insurance Services Corp. Companies, and Max Behm and Associates (Brokers). Kotlar's third amended complaint alleged causes of action for breach of contract against Hartford and negligence against the Brokers.[1]

The trial court sustained the defendants' demurrer to the complaint without leave to amend on the ground neither Hartford nor the Brokers owed a

---

[1]We ignore Kotlar's "cause of action" for breach of the covenant of good faith and fair dealing because it is part of the cause of action for breach of contract.

duty to notify Kotlar the policy was being canceled for nonpayment of premiums. Therefore, the Hartford policy was not in effect at the time of the accident.

Following the entry of judgment, Kotlar filed a timely appeal.

DISCUSSION

## I. Standard of Review.

■ In reviewing an order sustaining a demurrer without leave to amend, we accept as true the properly pleaded factual allegations of the complaint. (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) Where, as here, the complaint incorporates the terms of a contract, we consider those terms as part of the pleading. Furthermore, the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452; *King v. Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) Finally, we review the complaint de novo to determine whether the trial court erred in sustaining the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151].)

## II. Hartford Owed a Duty Under Insurance Code Section 677.2 to Provide Notice of Cancellation to All Named Insureds on the Policy.

■ Hartford's demurrer to the cause of action for breach of contract rests solely on the premise the policy was validly cancelled prior to the accident. In support of this premise, Hartford relies on language in the policy which is incorporated into the complaint and on the provisions of Insurance Code section 677.2.[2]

Section 677.2, subdivision (c) provides notice of cancellation of a commercial general liability policy for nonpayment of premiums "shall be given no less than 10 days prior to the effective date of the cancellation." Subdivision (b) of the statute provides the notice of cancellation "shall be in writing and shall be delivered or mailed to . . . *the named insured* at the mailing address shown on the policy." (Italics added.)

■ California courts require strict adherence to a statutory mandate regarding transmittal of cancellation notices. (*Naify v. Pacific Indemnity Co.* (1938) 11 Cal.2d 5, 10 [76 P.2d 663, 115 A.L.R. 476]; *Lee v. Industrial*

---

[2]All statutory references are to the Insurance Code unless otherwise stated.

*Indemnity Co.* (1986); 177 Cal.App.3d 921, 924-925, 926 [223 Cal.Rptr. 254]; accord, *First Nat. Ins. Co. v. F.D.I.C.* (S.D.Cal. 1997) 977 F.Supp. 1051, 1056 [failure to give notice under § 677.2].) If a cancellation is defective, the policy remains in effect even if the premiums are not paid. (*National Auto. & Casualty Inc. Co. v. California Casualty Ins. Co.* (1983) 139 Cal.App.3d 336, 341 [188 Cal.Rptr. 670].)

■■ Kotlar contends he was named as an insured under the policy and Hartford failed to provide him any notice of cancellation. Therefore, the policy was not validly cancelled under section 677.2, and Hartford breached its contract in failing to provide him with indemnity and a defense in the underlying action.

Hartford admits it did not send notice of cancellation to Kotlar, but argues it had no duty to do so. It points out the language of section 677.2, subdivision (b) requires a notice of cancellation be mailed only to *"the named insured."* (Italics added.) Hartford maintains the article "the" is singular and only refers to a single person or entity. In contrast, the article "a" is plural and refers to more than one person or entity. Because section 677.2 uses the singular article "the," Hartford maintains the Legislature intended "the named insured" to refer to only one person or entity. This person would be Meir because he was the person who purchased the policy and is referred to in the policy as the "first named insured." Therefore, Hartford contends, Kotlar was not entitled to notice of cancellation because Meir, not Kotlar, is "the named insured" on the policy.

We are not persuaded by Hartford's argument. Notwithstanding Hartford's interesting discourse on singulars and plurals in the English language, section 13 states for purposes of the Insurance Code "[t]he singular number includes the plural, and the plural the singular." ■■■■ Therefore, the notice provision of section 677.2, subdivision (b) is not limited to a single "named insured" but applies to all insureds named in the policy including Kotlar.[3]

■■ Our interpretation of section 677.2, subdivision (b) as requiring notice of cancellation to all named insureds on the policy is further supported by the public policy underlying the statutory notice provision.

---

[3]In contrast to a "named insured," an "additional insured" is one who falls within the policy's omnibus definition of insureds, which typically includes employees, real estate managers, and third party beneficiaries. (Richmond, *The Additional Problems of Additional Insureds* (1998) 33 Tort & Ins. L. J. 945, 947-948.) The names of "additional insureds" do not appear in the policy and the insurer typically does not even know who these persons are until a claim is filed. Clearly, such "additional insureds" are not entitled to notice of cancellation under section 677.2. An "additional named insured," on the other hand would be entitled to notice because he or she is "named" in the policy. "Additional named insureds" generally are persons who are added as insureds after the policy issues. (*Ibid.*)

The clear purpose of section 677.2 is to protect named insureds from losing insurance coverage due to a cancellation of the policy without notice. An insurer can reasonably expect a named insured such as Kotlar to rely on the policy to protect him in the event of claims arising from accidents on the leased property. However, in this case it appears Kotlar was left without insurance coverage because Hartford failed to provide him with a notice of cancellation due to nonpayment of premiums. Had Kotlar received an advance notice of cancellation, he could have protected his rights by paying the premium due or obtaining another insurance policy. Putting the burden on Hartford to send Kotlar a notice of cancellation is not unreasonable. Instead of making two copies of the notice it merely has to make three and purchase one additional stamp. Putting the burden on Kotlar to inquire whether Meir was paying the premiums would be unduly burdensome. It would require Kotlar to call Hartford every time a premium was due to ascertain whether it had been paid.

Courts in other jurisdictions have agreed for public policy reasons the insurer should bear the burden of notice to the named insureds.

In *Accardo v. Clarendon Nat. Ins. Co.* (La.Ct.App. 2000) 751 So.2d 975, 978, the court recognized the existence of "a strong public policy requiring prior notice of cancellation of an insurance policy to an insured so as to afford the insured time to obtain other insurance." The court in *Accardo* held where there is more than one named insured, the insurer must send a notice of cancellation to all named insureds when one insured cancels a policy. (*Ibid.*)

In *First Nat. Ins. Co. v. F.D.I.C.*, the federal district court, applying California law, ruled the insurer's notice of cancellation failed to conform with section 677.2, and therefore the insured's policy remained in effect even after the nonpayment of premiums. In support of its decision the court reasoned "[the insured] was prejudiced because had it received the notice prior to the . . . termination, it might have paid the premiums, preventing the termination from becoming effective, or it might have obtained coverage elsewhere." (*First Nat. Ins. Co. v. F.D.I.C., supra*, 977 F.Supp. at p. 1056.)

Taking the allegations of Kotlar's complaint as true, Hartford owed a duty under section 677.2 to give Kotlar advance notice of its intent to cancel the policy, and its failure to do so nullified the cancellation. Therefore, the trial court erred in sustaining the demurrer to the breach of contract action on the ground the contract had been terminated before the alleged breach occurred.

III. *The Brokers Were Not Negligent in Failing to Provide a Notice of Cancellation to Kotlar.*

 Kotlar cites no case holding an insurance broker owes a duty of care to a named insured to provide the named insured with notice of the insurer's intent to cancel the policy for nonpayment of premiums. Instead, he asks us to create such a duty. We decline to do so for several reasons.

In light of our holding section 677.2 imposes a duty on the insurer to notify the named insureds of its intent to cancel the policy we see no purpose in judicially imposing such a duty on a broker.

Furthermore, the relationship between an insurance broker and its client is not the kind which would logically give rise to such a duty. The duty of a broker, by and large, is to use reasonable care, diligence, and judgment in procuring the insurance requested by its client. (*Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp.* (1993) 12 Cal.App.4th 1249, 1257 [16 Cal.Rptr.2d 259].)

Kotlar's attempt to analogize the broker-client relationship to the attorney-client relationship is wide of the mark. The relationship between an attorney and client is a fiduciary relationship of the very highest character, and attorneys have a duty of loyalty to their clients. (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11 [60 Cal.Rptr.2d 207].) Thus, while an attorney must represent his or her clients zealously within the bounds of the law (*People v. McKenzie* (1983) 34 Cal.3d 616, 631 [194 Cal.Rptr. 462, 668 P.2d 769]), a broker only needs to use reasonable care to represent his or her client. (*Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp., supra,* 12 Cal.App.4th at p. 1257.) A dual agency can exist where a broker represents both the insured and the insurer. (*Ibid.*) For example, an insurance broker acts as an agent for the insured in procuring insurance for the insured, but the broker may also be the agent of the insurer in respect to the policy. (*Fraser-Yamor Agency, Inc. v. Del Norte County* (1977) 68 Cal.App.3d 201, 213 [137 Cal.Rptr. 118].) Lawyers, on the other hand, normally do not represent both parties to a transaction.

We conclude, therefore, the trial court correctly sustained the demurrer to the negligence cause of action against the brokers.

## Disposition

The judgment is reversed and the cause is remanded to the trial court with directions to overrule the demurrer as to the first and third (breach of contract) causes of action. Each party to bear its own costs on appeal.

Woods, J., and Neal, J., concurred.

A petition for a rehearing was denied October 26, 2000, and the petition of respondent Hartford Fire Insurance Company for review by the Supreme Court was denied January 24, 2001.