[No. B188714. Second Dist., Div. Two. Apr. 4, 2007.]

PACIFIC BUSINESS CONNECTIONS, INC., Plaintiff and Appellant, v. ST. PAUL SURPLUS LINES INSURANCE COMPANY, Defendant and Respondent.

518

COUNSEL

Law Office of Dale E. Washington and Dale E. Washington for Plaintiff and Appellant.

Cates Peterson and Mark D. Peterson for Defendant and Respondent.

OPINION

**ASHMANN-GERST, J.**—Following the denial of its insurance claim, appellant Pacific Business Connections, Inc. (PBC), brought this action against its insurer, respondent St. Paul Surplus Lines Insurance Company (St. Paul). St. Paul asserted that it was required to cancel the insurance policy pursuant to Insurance Code section 673 (section 673) once it received notice from Premium Financing Specialists of California, Inc. (Premium), the company that financed the insurance premiums, that PBC had defaulted on its loan obligation. The trial court agreed, and granted St. Paul summary judgment.

PBC appeals, contending that section 673 does not apply for a host of reasons.

We are not convinced by any of PBC's arguments. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

In 2003, St. Paul issued an insurance policy to PBC to insure PBC's fleet of trucks for its trucking business. Payment of the insurance premium was partially financed by Premium pursuant to a financing agreement executed by Premium and PBC in August 2003. Specifically, the total insurance premium due was $108,101.81. PBC agreed to make a down payment of $21,621 directly to St. Paul, leaving $86,480.81 to be financed. PBC further agreed to repay the loan balance in monthly installments of $9,840.66, beginning on August 25, 2003.

Moreover, the financing contract "[i]rrevocably appoint[ed]" Premium as PBC's attorney-in-fact "with . . . full authority upon any default to cancel" the insurance policy.

On August 22, 2003, Premium paid the financed amount to St. Paul through its agent.

When PBC failed to make the first payment,[1] Premium mailed PBC[2] a notice of intent to cancel on September 4, 2003. That notice provided: "If [Premium] does not receive the amount due on or before 09/14/03 your financed insurance policies will be cancelled." PBC still failed to pay, and on September 25, 2003, Premium mailed PBC a "notice of cancellation," with an effective date of September 28, 2003.

On November 4, 2003, St. Paul mailed PBC notice that it was cancelling the policy for nonpayment, effective November 20, 2003.

On November 12, 2003, St. Paul received a copy of Premium's September 25, 2003, notice of cancellation, and a request by Premium that St. Paul honor its September 28, 2003, cancellation effective date. In response to that request, on November 14, 2003, St. Paul processed a policy change endorsement, cancelling the policy effective September 28, 2003. It also reimbursed the unearned premium to Premium.

On November 15, 2003, one of PBC's trucks was involved in an accident and was damaged. PBC submitted a claim to St. Paul, and St. Paul denied it on the grounds that the loss was suffered after the policy had been cancelled.

*Procedural History*

Following the denial of its insurance claim, PBC initiated this action against St. Paul and others. Its first amended complaint, the operative pleading, alleges causes of action for breach of contract and breach of the duty of good faith and fair dealing, based upon the theory that St. Paul improvidently cancelled PBC's insurance policy.

St. Paul filed its answer on March 2, 2005, generally denying all allegations and asserting numerous affirmative defenses. Specifically, it claimed that PBC failed to state a claim for relief because Premium had full authority to cancel the insurance policy upon any default. When PBC defaulted on its payment obligations, Premium cancelled the insurance policy and St. Paul

---

[1] In fact, it is undisputed that PBC never made any payments to Premium.

[2] PBC disputes whether it received notice from Premium.

had no choice but to cancel the policy as directed by Premium. Moreover, St. Paul was entitled to rely upon the cancellation directive given by Premium, pursuant to section 673, subdivision (i).

In July 2005, St. Paul moved for summary judgment. It argued that it was entitled to judgment because the insurance policy was cancelled prior to when PBC suffered its loss. Anticipating PBC's theory that the policy was not cancelled until November 20, 2003 (after the loss), the date when St. Paul initially indicated that the policy would be cancelled, St. Paul argued that its cancellation procedure was preempted by Premium's earlier directive to cancel the policy. Pursuant to section 673, St. Paul was entitled to rely upon Premium's cancellation instruction.

PBC opposed St. Paul's motion, arguing that the cancellation endorsement was ineffective. It also argued that St. Paul backdated its documents in order to avoid paying PBC's claim. Moreover, it claimed that St. Paul did not require payment of the premium as a condition of coverage. Finally, it asserted that because St. Paul invoked its own right to cancel the insurance policy, it could not rely upon Premium's directive and section 673.

After hearing oral argument, the trial court took the matter under submission. On October 14, 2005, the trial court issued its ruling on St. Paul's motion, awarding it summary judgment. Preliminarily, the trial court ruled on the parties' evidentiary objections. It sustained each of St. Paul's three objections to certain portions of PBC's evidence.

As for the parties' legal arguments, the trial court determined that "[t]his case is governed by Insurance Code Section 673." Under that statute, St. Paul "was allowed (required, even) to rely upon the instruction by the finance company to cancel the policy. It was required to return the unearned premium. In denying the claim, St. Paul was not relying on its own planned cancellation, but rather on the cancellation by the finance company."

In so ruling, the trial court rejected PBC's contention that section 673 did not apply because St. Paul invoked its own cancellation process; the trial court noted that section 673, subdivision (j) "says no such thing."

With respect to PBC's theory that the policy was not effectively cancelled because the cancellation was not signed by an authorized representative of the insurance company, the trial court was not persuaded. "The policy says that

changes to the policy must be signed by an authorized representative. It says nothing about cancellations. A cancellation is not a change of the policy terms; it's a cancellation."

Ultimately, the trial court concluded that "St. Paul clearly acted in good faith. It received an inst[ru]ction from the finance company to cancel the policy due to nonpayment, and it followed that instruction. There is no bad faith, and clearly no despicable conduct in following those instructions. This is particularly true where [PBC] admits that it didn't pay the finance company, and the finance company had the right to cancel the policy for non-payment."

Judgment was entered, and this timely appeal followed.

## DISCUSSION

### I. Standard of Review

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo . . . ." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

### II. The Trial Court Properly Granted St. Paul's Motion for Summary Judgment

Section 673 governs cancellation of financed insurance policies. "The statute provides that the lender's (here [Premium]) instructions to cancel are conclusive for all purposes with respect to the insurer. (See § 673, subd. (i).) Thus, once the lender has instructed the insurer to cancel, the cancellation is effective." (*Pacific Auto. Ins. Co. v. Wolff* (1977) 72 Cal.App.3d 537, 540–541 [140 Cal.Rptr. 164].) Here, as authorized by section 673, subdivision (a), pursuant to the terms of the finance agreement, PBC specifically transferred to Premium the authority to cancel the policy. Premium cancelled the policy effective September 28, 2003, and St. Paul properly relied upon the notice of cancellation it received from Premium in issuing its cancellation endorsement to the policy.

■ On appeal, PBC challenges St. Paul's right to rely upon section 673, raising several arguments, each of which we consider, and reject, in turn. First, PBC claims that Premium's cancellation notices were defective because they never notified either St. Paul or PBC that the insurance policy was being cancelled. This argument is not compelling. PBC lacks standing to object to the alleged lack of notice of an insurance carrier in the application of section 673. (*Hoffman v. Citadel General Assurance, Ltd.* (1987) 194 Cal.App.3d 1356, 1363 [240 Cal.Rptr. 253].)

■ As for PBC's complaint that it never received notice of the cancellation from Premium, this argument is irrelevant. While PBC may have a gripe with Premium, that has nothing to do with PBC's claims against St. Paul. (*Holland v. Sterling Casualty Ins. Co.* (1994) 25 Cal.App.4th 1059, 1064 [30 Cal.Rptr.2d 809] ["If the lender does not send the precancellation notice to the insured, it must be the lender who is responsible to the insured, not the insurer"].) Once St. Paul received notice of the cancellation, St. Paul was required to honor the cancellation, even if notice to the insured was defective. (§ 673, subds. (g), (i); *Holland v. Sterling Casualty Ins. Co., supra,* at pp. 1063–1064.) It was not incumbent upon St. Paul to notify PBC that Premium was exercising its contractual right to direct St. Paul to cancel the insurance policy. (*Gorham Co., Inc. v. First Financial Ins. Co.* (2006) 139 Cal.App.4th 1532, 1542 [44 Cal.Rptr.3d 197]; *Holland v. Sterling Casualty Ins. Co., supra,* at p. 1064.)

Second, relying upon section 673, subdivision (j), PBC contends that because St. Paul initiated its own cancellation procedure, albeit after Premium notified PBC and St. Paul that it was cancelling the policy for nonpayment, St. Paul was not permitted to rely upon Premium's instructions to cancel. We are not convinced by PBC's strained interpretation of section 673, subdivision (j).

Section 673, subdivision (j) provides: "This section shall not apply where the insurer exercises its own right to cancel the policy for nonpayment of premium, direct or indirect, or otherwise. Such a cancellation shall be subject to all applicable provisions of the policy, this code, except this section, and any rights of the lender of which the insurer has written notice." (§ 673, subd. (j).)

Here, St. Paul did not exercise its own right to cancel the policy for nonpayment of premium. Rather, it followed Premium's directive in cancelling the policy, pursuant to section 673. Section 673, subdivision (j) simply does not apply.

The fact that St. Paul may have attempted to initiate a cancellation procedure on November 4, 2003, is irrelevant. By that time, Premium had already instructed St. Paul to cancel the insurance policy for nonpayment. In other words, Premium's notification preempted St. Paul's attempt to cancel the policy on its own initiative. And, nothing in section 673 suggests that a financing company's directive to cancel a policy can be trumped or nullified by a later attempt at cancellation by an insurance company.

It follows that St. Paul is not precluded from invoking section 673.

■ Third, PBC argues that because St. Paul notified PBC that it was cancelling the policy effective November 20, 2003, it had no obligation to backdate and honor Premium's section 673 notice. We disagree. Subdivision (e) of section 673 provides, in relevant part: "Cancellation shall be effective on the financed insurance policy . . . on the confirmation date specified in the written exercise of that right." Likewise, subdivision (g) of section 673 requires the insurance company to return all unearned premiums upon notice of cancellation by a financing company. As applied to this case, these statutes indicate that cancellation of the St. Paul policy became effective on the date specified in Premium's notice. (See *Pacific Auto. Ins. Co. v. Wolff, supra,* 72 Cal.App.3d at pp. 540–541.) And, at that time, St. Paul was required to return all unearned premiums, which it did.

Fourth, citing *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116 [100 Cal.Rptr.2d 246] (*Kotlar*), PBC asserts that it had a right to rely upon St. Paul's notice that it had insurance coverage through November 20, 2003. *Kotlar* is readily distinguishable.

In *Kotlar*, the court considered whether an insurer was required to give notice of cancellation, pursuant to Insurance Code section 677.2, to all named insureds under an insurance policy. (*Kotlar, supra,* 83 Cal.App.4th at pp. 1120–1122.) That is not the issue before us. At issue in this case is whether an insurance company can rely upon a financing company's notice of cancellation, pursuant to section 673. Insurance Code section 677.2 is not at play.

At best, the notice provision of Insurance Code section 677.2 could be likened to section 673, subdivision (c)'s requirement of notice by the financing company to the insured. (*Holland v. Sterling Casualty Ins. Co.,*

*supra*, 25 Cal.App.4th at pp. 1063–1064.) However, as set forth above, that would be an issue between the insured and the financing company. (*Id.* at p. 1064.) Once Premium notified St. Paul that it was cancelling the insurance policy, St. Paul was relieved of any duty of notification. (§ 673, subd. (i); *Gorham Co., Inc. v. First Financial Ins. Co., supra*, 139 Cal.App.4th at p. 1542.)

Fifth, PBC claims that St. Paul waived the purported lapse in coverage. We cannot agree.

■ The "test for waiver in the context of insurance contracts parallels the general rules for finding a waiver. In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." (*Klotz v. Old Line Life Ins. Co. of America* (N.D.Cal. 1996) 955 F.Supp. 1183, 1186.)

Here, there is no evidence that St. Paul intended to relinquish its right to cancel the insurance policy pursuant to Premium's instructions. In fact, the undisputed evidence strongly indicates otherwise. While St. Paul may have initiated its own cancellation procedures and notified PBC that the policy would be cancelled effective November 20, 2003, that occurred after Premium had notified the parties that it was cancelling the insurance policy for nonpayment. Pursuant to section 673, St. Paul can rely upon Premium's notice of cancellation. (*Holland v. Sterling Casualty Ins. Co., supra*, 25 Cal.App.4th at p. 1064.) In fact, it was required to rely upon Premium's instruction to cancel the policy and return the unpaid premium. (§ 673, subd. (g)(2); *Pacific Auto. Ins. Co. v. Wolff, supra*, 72 Cal.App.3d at p. 540.) Given that St. Paul was merely following Premium's instructions, we cannot agree with PBC that St. Paul waived the termination of coverage.

■ Because St. Paul had the right to rely upon section 673 and follow Premium's directive to cancel the insurance policy effective September 28, 2003, we conclude that the trial court properly granted St. Paul's motion for summary judgment.

All remaining arguments raised by the parties are moot.

## DISPOSITION

The judgment and orders of the trial court are affirmed. St. Paul is entitled to costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.