Filed 3/5/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BONNIE DuBECK,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA PHYSICIANS'<br>SERVICE,<br><br>      Defendant and Respondent. | B250129<br>(Los Angeles County<br>Super. Ct. No. BC397704) |

      APPEAL from a judgment of the Superior Court of Los Angeles County,
Mel Red Recana, Judge.  Reversed and remanded.

      Michael G. Nutter for Plaintiff and Appellant.

      Manatt, Phelps & Phillips, John M. LeBlanc and Joanna S. McCallum for
Defendant and Respondent.

In September 2006, respondent California Physicians' Service, doing business as Blue Shield of California (Blue Shield), canceled appellant Bonnie DuBeck's medical insurance policy, claiming DuBeck had made material misrepresentations in her application and concealed that she had undergone a fine needle aspiration for a lump in her breast several days before submitting the application.[1]  At the time of cancellation, the policy had been in effect 17 months, and Blue Shield had paid medical claims unrelated to the breast cancer, deemed a pre-existing condition.  The cancellation letter expressly stated that Blue Shield was electing to cancel coverage prospectively, rather than rescind the policy, and that any claims for covered services incurred prior to the cancellation would be covered.

In September 2008, appellant filed the underlying lawsuit, alleging among other things that Blue Shield had failed to pay covered claims while the policy was in force.  Blue Shield asserted as an affirmative defense its right to rescind the policy, voiding it *ab initio*.  The trial court granted summary judgment in favor of Blue Shield on this defense.  We hold that Blue Shield's September 2006 decision to cancel, rather than rescind her policy, its affirmation of policy coverage up to that date and assurance that it would pay for services covered prior to the cancellation, its retention of appellant's premiums, and its failure to assert a right to rescind until more than two years after it concededly had all the pertinent facts, constituted a waiver of its right to rescind as a matter of law.  Accordingly, we reverse the grant of summary judgment.

---

[1]     California Physicians' Service, doing business as Blue Shield of California, is a health care service plan operating under the Knox-Keene Health Care Service Plan Act of 1975 (Health and Saf. Code, § 1340 et seq.).  (See *Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, 463 (*Hailey*).)

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Background Facts*

Certain background facts are not in dispute. In October 2004, appellant physically injured her left breast running into a cabinet. She developed a lump in the area where the injury occurred. On February 11, 2005, appellant visited the Revlon UCLA Breast Center (Breast Center). She was examined by Sherry Goldman, a nurse practitioner, and the lump in her breast was subjected to a fine needle aspiration. That same day, appellant was given appointments in late February for a mammogram, ultrasound, and a consultation with Helena Chang, M.D., a breast surgeon.[2] The lump proved to be cancerous, and in the months that followed, appellant underwent surgery and other medical procedures. In the course of her treatment for breast cancer, her doctors discovered she was also suffering from leukemia.

B. *The Application*

Certain aspects pertaining to appellant's application for medical insurance also are undisputed. Appellant submitted the signed application to Blue Shield on February 16, 2005, five days after her visit to the Breast Center.[3] The section of the application seeking medical information asked whether the applicant had "received any professional advice or treatment . . . from a licensed health

---

[2]     Goldman concluded the mass was "very suspicious." Whether appellant was advised of Goldman's suspicions or the results of the test prior to her visit with Dr. Chang was not clear from the evidence presented. Appellant denied knowing Dr. Chang was a surgeon when she obtained the appointment.

[3]     Appellant claimed to have filled out the application with the assistance of a Blue Shield agent on February 11, prior to her visit to the Breast Center.

practitioner" or "had any symptoms" pertaining to "breast problems, breast implants, adhesion, abnormal bleeding, amenorrhea, endometriosis, fibroid tumors"; "[b]een an inpatient or outpatient in a hospital, surgical center, . . . or other medical facility"; had any "[a]bnormal laboratory results"; or had any "[d]iagnoses, symptoms and/or health problems not mentioned elsewhere on this application, or that have not been evaluated by a physician, or have any complications or residuals remaining following any treatment, or been advised to have a physician exam, further testing, treatment or surgery which has not yet been performed by a physician, dentist, or other health care provider?" Appellant checked "No" in answer to all these questions.[4]

On another page, the applicant was asked to "provide details regarding the last physician visit you . . . had, regardless of the date . . . ." Appellant responded that her last such visit had been with Dr. Hasson Hassouri in September 2004 for an annual checkup, that he found nothing, and that her "present status" was "great."

Page seven of the application form asked for the applicant's signature and stated: "I alone am responsible for the accuracy and completeness of the information provided on this application. I understand that neither I, nor any family members, will be eligible for coverage if any information is false or incomplete. I also understand that if coverage is issued, it may be canceled or rescinded upon such a finding."

---

[4]    Appellant contended that she understood the term "breast problems" to be qualified by the words that followed: "'breast implants, adhesions, abnormal bleeding, amenorrhea[,] endometriosis[,] fibroid tumors'" and that she believed she had been given the mammogram appointment because she had not had a routine mammogram in several years. She did not attempt to explain her negative answers to other questions.

4

C. *The Policy*

Blue Shield issued a policy dated April 1, 2005. The policy contained cancellation and termination provisions stating: "This Agreement may be canceled by [Blue Shield] for false representations to, or concealment of material facts from, [Blue Shield] in any health statement, application, or any written instruction furnished to [Blue Shield] by the Member at any time before or after issuance of this Agreement, or fraud or deception in enrollment" and Blue Shield "may terminate this Agreement for cause immediately upon written notice for the following: [] Material information that is false or misrepresented information provided on the enrollment application or given to the Plan . . . ."

Under the policy, pre-existing conditions were covered only after the insured had been "continuously covered for six (6) consecutive months, including [the] waiting period," which began "on the date [Blue Shield] receive[d] your application." The policy defined "pre-existing condition" as "'an illness, injury, or condition . . . which existed during the six (6) months prior to the Effective Date with [Blue Shield] if, during that time, any medical advice, diagnosis, care or treatment was recommended or received from [a] licensed health practitioner.'" (Caps deleted.)

D. *Cancellation Letter*

On September 8, 2006, approximately 17 months after issuing the policy, Blue Shield sent appellant a letter canceling it. The letter stated that Blue Shield had "reviewed medical information received after [appellant] submitted [her] application" and "determined that [she] did not provide complete and accurate information on [her] application for individual health coverage." Specifically, it referred to appellant's negative answers to [the] question . . . regarding her reproductive system and breasts, [the] question . . . regarding her having been an

5

inpatient or outpatient at a hospital or other medical facility, [the] question . . . regarding abnormal laboratory results, and [the] question . . . regarding diagnoses, symptoms and health problems not mentioned elsewhere. The letter further pointed out that appellant's application stated that her last visit with a physician had been with Dr. Hassouri on September 20, 2004, that he had made no findings, and that her present status was "great." The letter explained that Blue Shield had recently discovered that on February 11, 2005, appellant had been seen at the Breast Center and undergone a fine needle aspiration procedure on a mass in her breast, and that on that same date, she had scheduled a mammogram, an ultrasound and a consultation with a surgeon. The letter stated that had Blue Shield been aware of these facts, it would not have approved her application.

The letter went on to state: "*[A]t this time[,] Blue Shield has determined that, rather than rescind the coverage completely, your coverage was terminated prospectively and ended effective today, September 8, 2006.*" It advised appellant that "*[a]ny claims for covered services incurred before this date will be covered*," and that "*at this time Blue Shield will not seek refund of any claims payments made on your behalf.*" (Italics added.) It further stated that Blue Shield was "not waiving any right it may have under the Health Services Agreement or the terms of the application." On the same date it sent the cancellation letter, Blue Shield sent appellant a "Certificate of Creditable Coverage" confirming that her coverage "began: 04/01/2005" and "ended: 09/08/2006." The Certificate stated that it was "evidence of your coverage under this plan."

E. *The Complaint*

Two years later, in September 2008, appellant initiated a lawsuit against Blue Shield. The operative second amended complaint, filed in September 2010 (SAC), alleged that commencing in April and May 2005, Blue Shield began

6

receiving claims for the medical services being provided to appellant, which Blue Shield rejected as falling under the pre-existing condition exclusion of the policy. According to the SAC, by no later than August 2005, when appellant began to be monitored by Blue Shield's medical management department, Blue Shield knew or should have known that appellant had been seen for the breast condition on February 11, 2005. However, it was not until August 27, 2006, that Blue Shield commenced the formal investigation culminating in the September 8, 2006 letter of cancellation. By this time, appellant had been diagnosed with leukemia. The SAC contended that by delaying and canceling the policy, Blue Shield was able to collect and retain $19,600 in premiums, $5,450 more than it had paid to medical providers on appellant's behalf.

Appellant asserted, among other things, that Blue Shield had no right to cancel because the cancellation/termination provisions in the policy were in smaller type than permitted by California regulations. The SAC further alleged that with respect to expenses incurred during the term of the policy, the waiting period for coverage of pre-existing conditions should have expired six months after Blue Shield received appellant's application on February 18, 2005, rather than six months after the date the policy issued. The SAC asserted claims for breach of contract, violation of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.

On December 1, 2008, Blue Shield answered, asserting as an affirmative defense that the policy was subject to rescission, because appellant had willfully

7

misrepresented or concealed material facts in her application, rendering the policy void *ab initio*.[5]

F. *Motion for Summary Judgment*

1. *Blue Shield's Moving Papers*

In 2011, Blue Shield moved for summary judgment, seeking a judicial ruling of its absolute right to rescind based on material misrepresentations in the application, and contending that such rescission would provide a complete defense to all of the causes of action asserted by appellant.

In its statement of undisputed facts (SOF), Blue Shield established that appellant physically injured her breast and noticed a lump developing in late 2004, and that she visited the Breast Center on February 11, 2005, where she was examined by Goldman, had a fine needle aspiration performed on the lump, and scheduled a mammogram, ultrasound, and consultation with Dr. Chang. Blue Shield also presented evidence tending to establish the following additional facts: When appellant visited the Breast Center on February 11, 2005, she filled out a health questionnaire indicating that she had had a lump and pain in her breast since November 2004. On February 17, 2005, when appellant appeared for the appointment and procedures scheduled February 11, she filled out a second questionnaire answering "Yes" to the question whether she was "experiencing any breast problems," describing the problem as "[a] new lump that can be felt."

With respect to its own actions, Blue Shield presented evidence that it received appellant's application on or about February 18, 2005. Karen Hester,

---

[5]     Neither the original complaint nor Blue Shield's original answer are in the record. The parties agree, however, that Blue Shield asserted the same affirmative defenses in its original answer as it did in its answer to the SAC.

8

Blue Shield's underwriting training and auditing supervisor, reviewed the application and made the decision to issue appellant's policy. Hester explained that as part of its regular underwriting process for issuance of individual health care coverage, Blue Shield "reviews and evaluates the information disclosed by the applicants in their applications to determine whether Blue Shield will extend coverage, and if so, at what rate" using "proprietary written medical underwriting guidelines . . . to determine whether an applicant is eligible for coverage." In addition, Blue Shield underwriters review Blue Shield's records to determine whether the applicant had submitted a prior application or had a membership history with Blue Shield. "Under certain defined circumstances," Blue Shield's underwriters request medical information from the providers listed on the application and review those records. For example, Blue Shield requests medical records from the provider if the visit was within 30 days of the date of application, or if the application reveals any unresolved tests or procedures.

According to the SOF and Hester's declaration, in March 2005, after Blue Shield received and reviewed appellant's application, it obtained appellant's medical records from Dr. Hassouri. Review of those records indicated appellant had a history of suffering from migraine headaches, which had not been disclosed on the application. The policy was rated higher due to that factor, resulting in higher premiums. According to Hester, if appellant had revealed her visit to the Breast Center, the existence of the lump, and the procedure she had undergone, she "would not have qualified for the coverage she received and Blue Shield would not have issued the Plan."

Blue Shield further presented evidence that in July 2006, it received a request to cover services from out-of-network providers, prompting a referral for investigation to its eligibility review unit. In August 2006, its investigator, Paula Wells, requested appellant's medical records from the providers who had rendered

9

services to her since her coverage began in April 2005. In September 2006, Wells received records disclosing the Breast Center's February 11, 2005 breast examination and fine needle aspiration. On September 8, 2006, Blue Shield sent the letter canceling appellant's insurance policy.

### 2. *Appellant's Opposition*

In her opposition, appellant presented evidence that she had undergone breast cancer surgery on April 6, 2005, less than a week after her policy issued, and that claims for bills connected to her treatment were thereafter sent to Blue Shield. The following month, a claim was submitted by the anesthesiologist. On June 7, Blue Shield sent appellant an Explanation of Benefits stating: "This claim involved conditions which may have existed prior to the patient's enrollment. Processing has been suspended pending receipt of additional information requested. As soon as we receive this information, we will resume processing."[6] Appellant stated that if Blue Shield had promptly rescinded the policy, she could have applied for and obtained government-provided medical insurance coverage based on her low income. Appellant presented the deposition testimony of Blue Shield's senior underwriter and investigator, Paula Wells, who stated it was Blue Shield's "normal policy" to cancel, rather than rescind, a policy where the

---

[6]  Appellant also presented evidence that as early as August 2005, the medical management company assigned to manage appellant's case, PHI, was aware she had been diagnosed with breast cancer in "2/2005." Blue Shield contended the medical management company was not part of its corporate structure. The record is insufficient to determine the relationship between Blue Shield and PHI, but we note that "[n]otice of a fact to an agent is deemed to be notice of that fact to the principal as well." (*Allied Grape Growers v. Bronco Wine Co*. (1988) 203 Cal.App.3d 432, 449 & fn. 12; see Civ. Code, § 2332; Rest.2d Agency, § 9, subd. (3), p. 45.) In any event, the record establishes that Blue Shield's own June 2005 Explanation of Benefits referred to appellant's claim regarding her April 2005 surgery as possibly involving a pre-existing condition.

company learned of a misrepresentation in the application more than a year after it was signed.[7] Evidence presented in the opposition also established that when Wells made the decision to cancel the policy, Blue Shield had received more in premiums from appellant than it had paid in claims.

In opposing the motion, appellant contended, among other things, that Blue Shield had waived its right to rescind by delaying for an unreasonable period of time -- over two years -- after admittedly learning that appellant's application omitted information about the examination and fine needle aspiration she had undergone on February 11, 2005.

### 3. *Trial Court's Order*

The trial court granted summary judgment, finding that appellant's application for insurance contained material misrepresentations, and that such misrepresentations were willful. The court further found that Blue Shield undertook reasonable efforts to ensure that her application was accurate and complete at the time it issued the policy. The court concluded that Blue Shield was entitled to rescind, and that the policy was extinguished by such rescission.[8] The court did not address the waiver issue. Judgment was entered in favor of Blue Shield. This appeal followed.

---

[7] Wells testified that she followed the policy unless "there was something unusual about the case," which would trigger a discussion with her supervisor about the proper course to follow. She further testified that during her tenure as senior underwriter for Blue Shield, she had never "run across [a] situation" requiring departure from the policy.

[8] The court also ruled on the parties' evidentiary objections, essentially overruling all of appellant's and sustaining all of Blue Shield's. With one minor exception discussed further below, see footnote 13, *post*, we do not find the evidence that was the subject of the objections pertinent to our decision.

11

## DISCUSSION

Appellant contends that Blue Shield waived its right to rescind by waiting well over a year after learning of circumstances supporting rescission, and thereafter electing to cancel, rather than rescind, her policy. As explained below, we conclude that as a matter of law, Blue Shield's actions were wholly inconsistent with the assertion of a right to rescind.

### A. *Standard of Review*

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Mitchell v. United National Ins. Co*. (2005) 127 Cal.App.4th 457, 467.) "'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.'" (*Mitchell v. United National Ins. Co*., *supra*, at p. 467, quoting *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) "A defendant moving for summary judgment meets its burden of showing there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. [Citation.] Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. [Citation.]" (*Mitchell v. United National Ins. Co*., *supra*, at p. 467.) "On appeal from a summary judgment, an appellate court makes 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a

12

matter of law.'" (*Mitchell v. United National Ins. Co.*, *supra*, quoting *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

    B. *Waiver of Right to Rescind*

Rescission of contracts is governed by Civil Code sections 1691 and 1693, which provide that to effect a rescission a party must "promptly upon discovering the facts which entitle him to rescind [¶]. . . [g]ive notice of rescission to the party as to whom he rescinds" and restore or offer to restore "everything of value which he has received from [the other party] under the contract"; delay in seeking rescission may result in forfeiture of the right to rescind where the delay results in prejudice to the other party. (Civ. Code, § 1691; see § 1693; *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, 928.) Rescission extinguishes a contract, rendering it void *ab initio*, as if it never existed. (*Little v. Pullman* (2013) 219 Cal.App.4th 558, 568; see *Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 182 [explaining that rescission is "retroactive," effectively rendering a contract or insurance policy "totally unenforceable from the outset," while cancellation is "prospective" (Italics omitted.)].)

An insurer has the right to rescind a policy when the insured has misrepresented or concealed material information in seeking to obtain insurance. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 75; *TIG Ins. Co. of Michigan v. Homestore, Inc.* (2006) 137 Cal.App.4th 749, 755-756.) That right, like any other, can be waived. "An insurance company will be deemed to waive any ground which would otherwise entitle it to rescind a policy or treat it as forfeited when, despite knowledge of the facts giving it the option, it impliedly recognizes the continuing effect of the policy." (*Pierson v. John Hancock Mut. Life Ins. Co.* (1968) 262 Cal.App.2d 86, 91; see also *Silva v.*

13

*National American Life Ins. Co.* (1976) 58 Cal.App.3d 609, 615-616 ["'When an insurance company, with full knowledge of all the facts, enters into negotiations and relations with the assured, recognizing the continued validity of the policy, the right to a forfeiture for any previous default which may be asserted is waived. (Citations omitted.)'"].) This test for waiver in the context of insurance contracts comports with the general rule for finding a waiver: "'In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." (*Pacific Business Connections, Inc. v. St. Paul Surplus Lines Ins. Co*. (2007) 150 Cal.App.4th 517, 525, quoting *Klotz v. Old Line Life Ins. Co. of America* (N.D.Cal. 1996) 955 F. Supp. 1183, 1186.) "'The party who has the right may waive it without reliance by another.'" (*Silva v. National American Life Ins. Co., supra,* 58 Cal.App.3d at p. 615; accord, *Scott v. Federal Life Ins. Co*. (1962) 200 Cal.App.2d 384, 391.)

Waiver is ordinarily a question for the trier of fact; "[h]owever, where there are no disputed facts and only one reasonable inference may be drawn, the issue can be determined as a matter of law." (*Gill v. Rich* (2005) 128 Cal.App.4th 1254, 1264.)

Blue Shield acknowledges that by September 2006, it had obtained all the information needed to conclude appellant had misrepresented and/or omitted important information which, in its view, justified a decision to reject her application. Consistent with its corporate policy regarding discovery of misrepresentations in an application more than a year after the application was submitted, Blue Shield canceled appellant's coverage prospectively. In notifying appellant of its decision, Blue Shield stated unequivocally that "rather than rescind [appellant's] coverage completely," it had elected to "terminate[]" her coverage

14

"prospectively," so that such coverage "ended effective today, September 8, 2006." Having elected to terminate coverage, Blue Shield reaffirmed the existence of the policy from April 2005, assuring appellant that "[a]ny claims for covered services incurred before [September 8, 2006] will be covered," and issuing her a separate Certificate of Creditable Coverage confirming that her coverage "began: 04/01/2005" and "ended: 09/08/2006." Had Blue Shield rescinded the policy, it would have been required to return to appellant the premiums she had paid -- which at the time exceeded the payments Blue Shield had expended for her medical care. Instead, it elected to cancel the policy, retaining the profit.

Blue Shield maintained that position for over two years, neither disavowing its own affirmation of appellant's policy coverage nor offering to return her premiums. Not until appellant filed suit challenging the decision to cancel and the coverage decisions made during the policy period did Blue Shield assert a right to rescind. It offered no evidence of new information obtained post-cancellation, no explanation for the reversal of its earlier election to cancel, "rather than rescind," and no justification for the disavowal of its earlier confirmation of coverage or for the retraction of its assurance that covered services incurred during the pendency of appellant's policy would be paid for.[9]

We conclude that Blue Shield's conduct was wholly inconsistent with the assertion of its known right to rescind. It is undisputed that by September 8, 2006, Blue Shield was aware of the pertinent information and, consistent with its

---

[9]    Blue Shield contends that by stating in its cancellation letter that it was "not waiving any rights it may have under the Health Services Agreement or the terms of the application," it communicated its intent to retain rescission as an option for the future. The statement, which said nothing about rescission, might support that Blue Shield intended to assert its right to contest coverage of specific claims incurred during the term of the policy, but could not create an unlimited right to rescind, untethered to legal principles applicable to waiver.

15

corporate policy, elected to cancel, rather than rescind, appellant's policy. It communicated this election directly to appellant, along with assurances that the cancellation was "prospective," leaving her entitled to all benefits of the policy from April 2005 to September 2006. Had Blue Shield asserted a right to rescind in 2006, appellant would not have incurred the effort and expense of attempting to enforce rights Blue Shield itself assured her she had, *viz.*, the right to have "[a]ny claims for covered services incurred before [September 8, 2006] . . . covered." In waiting over two years to assert a right to rescind, while assuring appellant of her right to coverage during the period the policy was in effect and retaining her premiums for such coverage, Blue Shield engaged in conduct "'so inconsistent with the intent to enforce the right as to induce a reasonable belief that it ha[d] been relinquished.'" (*Pacific Business Connections Inc. v. St. Paul Surplus Lines Ins. Co.*, *supra*, 150 Cal.App.4th at p. 525.)[10]

Moreover, although Blue Shield's actions in September 2006 and the 27 months thereafter were sufficient to defeat any right to rescind, its earlier actions lend additional support to our conclusion that it had lost its right to rescind as a matter of law. Blue Shield's receipt of the claim for appellant's April 6, 2005 breast cancer surgery, for which it suspended payment due to its suspicion that the condition pre-dated appellant's enrollment, should have triggered an earlier

---

[10]     In 2009, the Legislature enacted Health and Safety Code section 1389.21, which prohibits an insurer governed by the Knox-Keene Health Care Service Plan Act from rescinding or canceling a health care service plan contract for any reason -- including "omissions, misrepresentations, or inaccuracies in the application form" -- more than 24 months following its issuance. The effective date of the statute was January 2010. Though not directly applicable, we find support for our decision in the Legislature's judgment that two years is ample time for an insurer to uncover any misrepresentations made in an application and determine whether to rescind or continue coverage. Here, Blue Shield first asserted its right to rescind appellant's policy over three and a half years after issuing it, and more than two years after admittedly learning the truth about appellant's medical condition.

investigation and resolution of appellant's right to remain insured. "[A]ctual knowledge of a breach of a policy provision is not essential to establish a waiver of a policy provision. It is sufficient if the insurer has information which if pursued with reasonable diligence would lead to the discovery of the breach." (*Dalzell v. Northwestern Mutual Ins. Co.* (1963) 218 Cal.App.2d 96, 102.) This principle was recognized in *Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, where the insured under an auto policy misrepresented his driving record and the insurer failed to conduct a simple check of Department of Motor Vehicles records that would have revealed the misrepresentation until the insured was involved in a collision, two years after the issuance of the policy. In rejecting the insurer's contention that the misrepresentation in the application precluded liability to those injured in the collision, the Supreme Court observed: "'The rule is well established that the means of knowledge is equivalent to knowledge, and that a party who has the opportunity of knowing the facts constituting the fraud of which he complains cannot be supine and inactive, and afterwards allege a want of knowledge that arose by reason of his own laches or negligence.'" (71 Cal.2d at p. 669, fn. 7, quoting *Shain v. Sresovich* (1894) 104 Cal. 402, 405.) The principle was also recognized in *Di Pasqua v. California etc. Life Ins. Co.* (1951) 106 Cal.App.2d 281 and *Rutherford v. Prudential Ins. Co. of America* (1965) 234 Cal.App.2d 719, in which the courts held that an insurer could not rely on misrepresentations in an insurance application to avoid liability where the misrepresentations were contradicted by other information known to the insurer when it issued a policy. (106 Cal.App.2d at pp. 284-285; 234 Cal.App.2d at pp. 733-735.) As the court stated in *Rutherford,* "The [facts known to the insurer] should have put the underwriter on notice that the application form was incomplete and inaccurate in material respects. By failing to request additional information from [the doctors who examined the applicant] the insurance company waived any

17

misstatements or concealments which subsequently appeared to exist in the application." (234 Cal.App.2d at p. 735; see also Ins. Code, § 336 ["The right to information of material facts may be waived . . . by neglect [of the insurer] to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated."].)

Appellant underwent breast cancer surgery five days after the effective date of the policy, and her medical providers began submitting bills for her treatment to Blue Shield shortly thereafter. In its June 2005 Explanation of Benefits, Blue Shield stated that the breast cancer "may have existed prior to the patient's enrollment" and that processing of the claim was suspended "pending receipt of additional information requested." Yet by its own admission Blue Shield neither commenced an investigation nor obtained records confirming the date of appellant's first breast cancer-related procedure for another year.[11] By ignoring information that would have resolved the truthfulness of the representations in appellant's application at an early stage and determining at that time whether to continue as her insurer, Blue Shield allowed appellant to incur substantial medical expenses and dissuaded her from investigating the availability of government assistance.[12] Blue Shield's lack of diligence in the early months of the policy and

_____

[11]    Wells stated that a July 2006 request to cover services from "out-of-network provider[s]" triggered her investigation. Blue Shield did not explain why requests to cover surgery for breast cancer not revealed in the application and made shortly after issuance of the policy did not warrant similar investigation.

[12]    The trial court properly sustained Blue Shield's objections to appellant's statement that she would have qualified for government assistance to pay for her medical care had she applied. However, we may take judicial notice that such programs are available to the uninsured.

the apparent prejudice to appellant provide a second and independent basis for rejecting its claimed right to rescind.[13]

---

[13] Because we resolve the issues in this appeal on other grounds, we need not resolve whether to reverse under the holding in *Hailey*, *supra*, 158 Cal.App.4th 452. There, the insurer -- Blue Shield -- claimed that the applicant's omission of information concerning her husband's excessive weight and other health issues when completing the application allowed it to rescind the policy after her husband incurred substantial medical expenses in an automobile accident. (*Id*. at p. 461.) Pointing to evidence that "Blue Shield does not immediately rescind health care contracts upon learning of potential grounds for rescission, but waits until the claims submitted under that contract exceed the monthly premiums being collected," the court held: "[A] health care services plan may not adopt a 'wait and see' attitude after learning of facts justifying rescission by continuing to collect premiums while keeping open its rescission option if the subscriber later experiences a serious accident or illness that generates large medical expenses." (*Id*. at p. 473. As noted, when Blue Shield elected to cancel appellant's policy, it had collected more in premiums than it had paid. Only after appellant sued Blue Shield did it assert a right to rescind which, if successful, would have obligated the company to return appellant's premiums but spared it the expense of litigating her claims.

**DISPOSITION**

The judgment is reversed.  The matter is remanded for further proceedings consistent with this opinion.  Appellant is awarded her costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:



WILLHITE, Acting P. J.



COLLINS, J.