Filed 2/26/24

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TANIA MOLINAR et al., | D081431 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-20-00034682-CU-BC-CTL) |
| 21ST CENTURY INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge. Reversed and remanded.

Law Offices of Brandon M. Smith and Brandon M. Smith for Plaintiffs and Appellants.

Horvitz & Levy, Mitchell C. Tilner, Cameron Fraser, Steven Fleischman; Demler, Armstrong & Rowland, James P. Lemieux, and David W. Jennings for Defendant and Respondent.


When adult children still live with their parents, it is not unusual for the parents to keep them on their automobile insurance policies and provide coverage for vehicles owned by the children. If the parents fail to pay the

premiums, however, their adult children face the risk of becoming uninsured when the insurer cancels the policy for nonpayment.

The question presented here is whether an automobile insurer had a duty to give advance notice of cancellation not only to the parents as policyholders, but also to an adult daughter who was named as an insured driver on her parents' policy and whose vehicle was also insured under the policy. Under Insurance Code[1] section 662, subdivision (a), we conclude that the answer is yes. Because the insurer did not give advance notice of cancellation to the adult daughter, the policy was still legally in effect when she got into an accident driving her covered vehicle without knowledge of the purported cancellation. We therefore reverse the trial court's summary judgment in favor of the insurer on claims arising out of its refusal to defend or indemnify the daughter in a lawsuit brought against her by one of the accident victims.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Silvia Escarcega and Alberto Molinar live in Jamul. They have been married since 1992 and have three children, including plaintiff Tania Molinar, their youngest child who was born in 1995.

In 2006, Silvia and Alberto purchased an automobile insurance policy from defendant 21st Century Insurance Company (21st Century). In July 2013, shortly after Tania turned 18 years old, Silvia contacted 21st Century to add Tania to the policy. She provided all the information 21st Century requested about Tania to add her to the policy. Silvia was not familiar with the term "rated driver" and had no conversation with the 21st Century representative about adding Tania as a "rated driver."

---

[1] All further statutory references are to the Insurance Code.

2

21st Century agreed to add Tania to the policy, increased the premium to cover her, and sent a new declarations page to Silvia and Alberto. In determining the new premium, 21st Century considered Tania's driving record, the kind of vehicle she was driving, the year of the vehicle, and how many miles she drove per year. 21st Century also gave her a good student discount.

Under "Named Insured and Mailing Address," the new declarations page listed Silvia and Alberto at their address in Jamul. The declarations page also identified Silvia, Alberto, and Tania as "Rated Driver[s]." The policy itself did not define the terms "named insured" or "rated driver." According to the testimony of 21st Century's representatives, a "rated driver" is "a person in the household or persons in the household who are insured for purposes of driving a vehicle." A "rated driver" who is listed on the declarations page is "insured" to drive any of the vehicles listed on the declarations page and is "covered the same way" as a named insured when driving one of those vehicles. Under 21st Century's internal underwriting guidelines (which are not part of the policy), there can be no more than two people designated as named insureds for a single policy, and if there are two, they must be spouses who live in the same household.

In 2016, Tania purchased a 2009 Mazda for herself. Alberto contacted 21st Century to add Tania's Mazda to the policy. He informed 21st Century that Tania was the registered owner and would be driving the Mazda. 21st Century added the Mazda to the policy and updated the declarations page and monthly premiums to reflect the change. 21st Century also issued an insurance identification card in Tania's name.

Effective January 31, 2017, 21st Century renewed the policy for six months. Under "Named Insured and Mailing Address," the declarations page

3

for the renewed policy continued to list Silvia and Alberto at their Jamul address. It also continued to list Silvia, Alberto, and Tania as "Rated Driver[s]" and Tania's Mazda as one of the covered vehicles.

Beginning in 2012, Silvia and Alberto paid the monthly policy premium to 21st Century by automatic debit withdrawal from Silvia's Wells Fargo account. The premium payments were due by the end of each month. In March 2017, Wells Fargo issued Silvia a new debit card. As a result, Wells Fargo was unable to process the monthly payment on March 31, 2017. Silvia and Alberto were not aware of the nonpayment.

On April 3, 2017, 21st Century mailed a letter to Silvia and Alberto at their correct address informing them that the March 31, 2017 payment had not gone through and asking them to make payment arrangements. Three days later, 21st Century mailed a notice of cancellation of the policy to Silvia and Alberto at their correct address as shown on the policy's declarations page. The notice of cancellation explained that the policy would be cancelled on May 1, 2017 due to nonpayment of the premium. The notice was only addressed to Silvia and Alberto. 21st Century did not send a separate notice to Tania. At the time, Tania was 21 years old and lived with her parents at their Jamul residence.

Silvia and Alberto do not recall receiving or reading the April 3, 2017 letter or April 6, 2017 notice of cancellation. Tania also never saw the notice. Tania did not open mail that was addressed to her parents. Because Silvia and Alberto did not contact 21st Century to make the missed premium payment, 21st Century deemed the policy cancelled as of May 1, 2017.

Four days later, Tania caused a serious car accident resulting in grave injuries to her passenger and another driver, James Dodson. Tania's

4

passenger died from his injuries. At the time of the accident, Tania and her parents were still unaware that the 21st Century policy had been cancelled.

In February 2018, Dodson filed a complaint against Tania alleging general and special damages exceeding $7.5 million. After Tania tendered the lawsuit to 21st Century, its counsel responded with a letter denying Tania a defense or indemnity on the basis that the policy had been validly cancelled four days before the accident. The letter did not discuss whether 21st Century had an obligation to give advance notice of cancellation to Tania as a covered insured.

As a territory manager for 21st Century, Elizabeth Mancilla was involved in the investigation of Tania's claim and was the person most knowledgeable on the denial of her claim. According to Mancilla, Tania did not receive a notice of cancellation because she was not the named insured on the policy, and she was only designated as a rated driver. Mancilla did not conduct any research on the issue and was not aware of anyone else researching whether this conclusion was consistent with California law. She did not investigate whether Tania should have been sent notice of cancellation.

Tania and her parents sued 21st Century for breach of contract and breach of the implied covenant of good faith and fair dealing. After completion of discovery, 21st Century moved for summary judgment primarily on the ground that it had validly cancelled the policy before Tania's accident. Plaintiffs opposed the motion on the basis that 21st Century did not properly cancel the policy because it never provided Tania with notice of cancellation as required by the policy and section 662, subdivision (a).

The trial court granted summary judgment for 21st Century. As to the breach of contract claim, the court found that 21st Century was not required

to give Tania advance notice of cancellation because she was not a "named insured, lienholder or additional interest" within the meaning of section 662, subdivision (a). The court concluded that 21st Century effectively cancelled the policy by mailing the notice of cancellation to Silvia and Alberto at the address shown on the declarations. The court further concluded that because there was no coverage under the policy due to its cancellation, plaintiffs could not maintain a claim for bad faith and could not recover punitive damages.

The court entered judgment for 21st Century based on the summary judgment order. Plaintiffs timely appealed.

DISCUSSION

We must decide whether 21st Century validly cancelled the policy after giving notice to Silvia and Alberto, but not Tania. Plaintiffs argue that 21st Century was required both by statute (§ 662, subd. (a)) and the specific terms of the policy to give advance notice to Tania. Applying a de novo standard of review, we agree with their statutory argument. (See *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39 [de novo review for summary judgment rulings]; *Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857 [de novo review for statutory interpretation].)

The Insurance Code permits cancellation of an automobile insurance policy for nonpayment of premiums. (§§ 660, subd. (f), 661, subd. (a)(1).) Section 662, subdivision (a) provides: "A notice of cancellation of a policy shall not be effective unless mailed or delivered by the insurer to the named insured, lienholder, or additional interest at least 20 days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium, at least 10 days' notice of cancellation accompanied by the reason for the cancellation shall be given." Section 664 provides: "Proof of mailing of notice of cancellation . . . to the named insured

6

at the address shown in the policy or to the named insured's last known address, shall be sufficient proof of notice."

"California courts require strict adherence to a statutory mandate regarding transmittal of cancellation notices." (*Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 (*Kotlar*).) "Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation." (*Mackey v. Bristol West Ins. Services of Cal., Inc.* (2003) 105 Cal.App.4th 1247, 1258 (*Mackey*).) "If a cancellation is defective, the policy remains in effect even if the premiums are not paid." (*Kotlar*, at p. 1121.)

Plaintiffs do not contend that Tania was a "lienholder" or "additional interest" within the meaning of section 662, subdivision (a). Thus, the only question is whether Tania was entitled to notice of cancellation as "the named insured." (§ 662, subd. (a).) 21st Century argues that "the named insured" includes only the policyholders, Silvia and Alberto. Plaintiffs contend that "the named insured" includes anyone who is covered as an insured and identified by name in the policy, including Tania.

In *Kotlar*, the court faced a similar question of statutory interpretation for a commercial general liability (CGL) insurance policy. There, a commercial lessee (Meir) agreed to maintain liability insurance for the benefit of its landlord (Kotlar). Meir purchased a CGL policy from Hartford Insurance Company (Hartford), naming Meir and Kotlar as insureds. Kotlar received a certificate of insurance informing him that he was an additional insured on the policy. But Hartford later cancelled the policy after Meir failed to pay the premiums. Hartford sent advance notice of its intent to cancel the policy to Meir as the policyholder, but not to Kotlar as the additional insured. After the policy was cancelled without Kotlar's

7

knowledge, one of Meir's customers slipped and fell on the property, suffering a fractured hip. The customer sued Kotlar for premises liability. Kotlar tendered defense of the action to Hartford, which refused to defend or indemnify him on the ground that the policy had been cancelled for nonpayment of premiums before the accident. (*Kotlar, supra*, 83 Cal.App.4th at p. 1119.)

Kotlar then brought a breach of contract and bad faith action against Hartford. Kotlar argued that Hartford owed a duty to provide advance notice of the policy's cancellation to him under section 677.2, subdivision (b). This statute provides that notice of cancellation of a CGL policy must be sent "to the named insured at the mailing address shown on the policy." (§ 677.2, subd. (b).) Kotlar asserted that he qualified as a "named insured" because "he was named as an insured under the policy . . . ." (*Kotlar, supra*, 83 Cal.App.4th at p. 1121.) In response, Hartford argued that the statutory phrase "the named insured" referred to only a single person or entity, and that Meir was the named insured "because he was the person who purchased the policy and is referred to in the policy as the 'first named insured.' " (*Ibid*.)

The Court of Appeal agreed with Kotlar. Because the Insurance Code provides that "the singular number includes the plural" (§ 13), the court concluded that the statutory phrase "the named insured" (§ 677.2, subd. (b)) was "not limited to a single 'named insured' but applies to all insureds named in the policy including Kotlar." (*Kotlar, supra*, 83 Cal.App.4th at p. 1121.) The court acknowledged that "additional insureds" who are *not* identified by name in the policy, but who fall within a more general "omnibus" definition (such as all employees of the named insured), "are not entitled to notice of cancellation under section 677.2." (*Id*. at p. 1121, fn. 3.) But it concluded that any insured identified by name in the policy was entitled to notice of

8

cancellation: "An 'additional *named* insured,' on the other hand *would* be entitled to notice because he or she is 'named' in the policy. 'Additional named insureds' generally are persons who are added as insureds after the policy issues." (*Ibid*., italics added.)

The *Kotlar* court further concluded that its interpretation was "supported by the public policy underlying the statutory notice provision." (*Kotlar, supra*, 83 Cal.App.4th at p. 1121.) "The clear purpose of section 677.2 is to protect named insureds from losing insurance coverage due to a cancellation of the policy without notice." (*Id*. at p. 1122.) "However, in this case it appears Kotlar was left without insurance coverage because Hartford failed to provide him with a notice of cancellation due to nonpayment of premiums. Had Kotlar received an advance notice of cancellation, he could have protected his rights by paying the premium due or obtaining another insurance policy." (*Ibid*.) "Putting the burden on Hartford to send Kotlar a notice of cancellation is not unreasonable. Instead of making two copies of the notice it merely has to make three and purchase one additional stamp." (*Ibid*.)

The *Kotlar* court also relied on two cases from other jurisdictions, including one involving cancellation of an automobile insurance policy. (*Kotlar, supra*, 83 Cal.App.4th at p. 1122, citing *Accardo v. Clarenton Nat'l Ins. Co.* (La.Ct.App. 2000) 751 So.2d 975, 978.) As described in *Kotlar*, "[t]he court in *Accardo* held that where there is more than one named insured, the insurer must send a notice of cancellation to all named insureds when one insured cancels a policy." (*Kotlar*, at p. 1122.)

We conclude that the reasoning of *Kotlar* applies here. The statute governing notice of cancellation of an automobile insurance policy also requires notice to "the named insured." (§ 662, subd. (a).) "Where the same

9

term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise." (*Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 356.) We discern no reason the statutory phrase "the named insured" would carry differing meanings for these two parallel Insurance Code provisions governing notice of cancellation. Consistent with *Kotlar*, we therefore conclude that the phrase "the named insured" as used in section 662, subdivision (a), refers to "all insureds named in the policy," not just the policyholder.[2] (*Kotlar, supra*, 83 Cal.App.4th at p. 1121.)

21st Century admits that Tania was an "insured" under the policy. There is also no dispute that Tania was identified by name on the declarations page, and 21st Century knew she was the registered owner of the covered Mazda. Under the reasoning of *Kotlar*, therefore, she qualifies as an "insured[] named in the policy" who was entitled to notice of cancellation under the statute. (*Kotlar, supra*, 83 Cal.App.4th at p. 1121; see also Black's Law Dict. (11th ed. 2019), p. 962, col. 1 [defining "additional insured" as someone who "is covered by an insurance policy but who is not the primary insured"]; *ibid.* [defining "named additional insured" as an additional insured who is "specifically named in the policy"].) The mere fact that 21st Century labeled Tania as a rated driver does not alter her status as an "insured" who was covered and specifically "named in the policy." (*Kotlar*, at p. 1121.)

---

[2] Because Tania was an adult, we need not and do not decide whether an insurer would have to provide notice of cancellation to a minor who is covered as an insured driver on her parents' policy and lives in the same household. Specifically, we do not decide whether notice to the parent may be imputed to the minor child in such circumstances.

As in *Kotlar*, this result is supported by public policy considerations. The purpose of requiring advance notice of cancellation is to protect the insured against unintended termination of coverage based on a missed premium payment, and to provide an opportunity for the insured to make the payment or obtain other insurance. (*Mackey, supra*, 105 Cal.App.4th at p. 1261.) California's financial responsibility laws also reflect a strong public policy against having uninsured drivers on the roads. (See Veh. Code, § 16000 et seq.; *Nat'l Auto. & Casualty Ins. Co. v. Cal. Casualty Ins. Co.* (1983) 139 Cal.App.3d 336, 340 ["Public policy certainly favors a system under which motorists will not be operating their vehicles without the benefit of public liability coverage"].) Critically, the purpose of these requirements is not just to protect the insured: "Our state's financial responsibility laws were enacted to provide monetary protection to the public." (*Mercury Casualty Co. v. Chu* (2014) 229 Cal.App.4th 1432, 1454–1455.)

As courts in other jurisdictions have observed: " 'Notice of motor vehicle liability insurance cancellation touches an area of public interest far beyond the scope of the parties before us. The dangers of driving uninsured vehicles are obvious. Not only may one be subjected to the risk of a large financial liability at the hands of the negligently injured person, but the opportunity for that other injured party to gain a reasonable amount of damages for his injury is considerably lessened. It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance.' " (*Hansen v. U.S.A.A. Casualty Ins. Co.* (Neb. 1980) 291 N.W.2d 715, 718 (*Hansen*), quoting *United Farm Bureau Mut. Ins. Co. v. Adams* (Ind.Ct.App. 1969) 251 N.E.2d 696, 698.)

Requiring an automobile insurer to give notice of cancellation to "all insureds named in the policy" furthers these public policies. (*Kotlar, supra*,

11

83 Cal.App.4th at p. 1121.) It is particularly important that the insurer give notice to all named insureds known to have an ownership interest in any covered vehicle, so that they do not continue to put themselves and others at risk by driving the vehicle without the required coverage. (See *Hansen, supra*, 291 N.W.2d at pp. 150–156 [holding as a matter of public policy that before cancelling an automobile insurance policy, the insurer must give notice of cancellation to all known owners of covered vehicles even if they are not designated on the face of the policy as the named insured].) "Victims among the public are poorly protected if the liability insurance on a car can be terminated while the offending owner drives on in ignorance." (*Government Employees Ins. Co. v. Employers Commercial Union Ins. Co.* (1976) 387 N.Y.S.2d 52, 54 (*GEICO*).)

These public policies are directly implicated here. Tania was covered as an insured under the 21st Century policy; 21st Century issued an insurance identification card in her name for the Mazda; and 21st Century knew she was the registered owner of the covered Mazda. Because she never received notice of the cancellation, however, Tania became uninsured without her knowledge. Tania continued driving the Mazda unaware of her uninsured status, leaving herself exposed to calamitous consequences. "Worse it left accident victims subject to injury at [her] hands without the insurance protection our laws mandate." (*GEICO, supra*, 387 N.Y.S.2d at p. 53.) If Tania had received advance notice, she "could have protected [her] rights by paying the premium due or obtaining another insurance policy" (*Kotler, supra*, 83 Cal.App.4th at p. 1122), and the accident victims would have had the protection contemplated by our financial responsibility laws.

We are not persuaded by 21st Century's arguments to the contrary. 21st Century attempts to distinguish *Kotlar* by arguing "it was undisputed

12

that both parties were named insureds, and the question was whether one or both were entitled to notice of cancellation under section 677.2." This is not accurate. The insurer in *Kotlar* made the same argument 21st Century is making here—that only the policyholder "who purchased the policy" qualified as "the named insured" under the statute. (*Kotlar, supra*, 83 Cal.App.4th at p. 1121.) The *Kotlar* court rejected this argument by holding that an additional insured who was specifically named in the policy—but was *not* the actual policyholder and was *not* responsible for payment of the premiums— also qualified as "the named insured" and was therefore entitled to notice of cancellation. (*Id.* at pp. 1121–1122.)

21st Century further argues that in *Kotlar*, "the insurer agreed— separately from the policy and in writing—to provide the plaintiff with '30 days' advance notice of cancellation of the policy' and then failed to do so." It is true that in its summary of the factual background, the *Kotlar* court mentioned that the certificate of insurance issued to Kotlar "contained a provision in which Hartford promised it would '*endeavor*' to give Kotlar 30 days' advance notice of cancellation of the policy." (*Kotlar, supra*, 83 Cal.App.4th at p. 1119, italics added.) But the court did not mention the certificate of insurance again or rely on it at all in its legal analysis of the cancellation issue—it relied solely on the statutory notice requirement of section 677.2. (*Id.* at pp. 1120–1122.) Nor could the court have relied on the certificate of insurance. A certificate of insurance is merely evidence of the coverage; it does not create additional rights or obligations beyond the policy. (§ 384, subd. (a); *Empire Fire & Marine Ins. Co. v. Bell* (1997) 55 Cal.App.4th 1410, 1423, fn. 25.)

21st Century asserts that plaintiffs' statutory interpretation would lead to absurd results for two reasons. First, it claims that insurers would have to

13

mail multiple notices of cancellation to the same address or possibly even different addresses when children covered by their parents' policies move away from home. But there is nothing absurd or unduly onerous about mailing more than one notice. (See *Kotlar, supra*, Cal.App.4th at p. 1122 [rejecting similar argument].) Car insurance policies generally require that covered children share the same permanent address as their parents. According to Mancilla, a rated driver must be a member of the same household as a 21st Century policyholder. Moreover, the statute by its terms allows any such notice to be mailed "to the named insured at the address shown in the policy or to the named insured's latest known address . . . ." (§ 664.) These addresses would already be known to the insurer. The extra burden of sending such a notice to all insureds named in the policy is insignificant in comparison to the importance of giving notice to covered drivers and vehicle owners that they are about to become uninsured.

Second, 21st Century argues that this result would allow anyone who is named as a rated driver on the declarations page to change or cancel the policy as a "named insured," even a teenage child covered on her parents' policy. (§ 667.5.) We disagree. Section 667.5 states in relevant part: "Unless a policy specifically provides otherwise, the cancellation of a policy, or any change in the policy, executed by an insurer, at the request of *the named insured designated on the declarations page of the policy*, shall be binding upon any other insured or named insured." (Italics added.) By its terms, this statute only refers to changes or cancellations requested by someone who is *designated as* the named insured on the declarations page, such as Silvia and Alberto. It does not permit changes or cancellations by someone like Tania who is identified by name as an insured, but not specifically designated as the named insured on the declarations page.

14

If anything, section 667.5 demonstrates that the Legislature knows how to refer to a person or entity specifically "designated" as the named insured on the declarations page of a policy. But the Legislature did not use similar language in the notice of cancellation provision. Instead, it merely required advance notice to "the named insured." (§ 662, subd. (a).) When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning. (*Turner v. Victoria* (2023) 15 Cal.5th 99, 115.)

Finally, the two California cases cited by the trial court (*Berendes v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 571 (*Berendes*) and *Giovanna v. Vigilant Ins. Co.* (1984) 156 Cal.App.3d 368 (*Giovanna*)) do not assist 21st Century. In *Berendes*, the question was whether a pedestrian who was struck and killed by a car was entitled to underinsured motorist coverage under three automobile insurance policies issued to her father as the named insured. Applying the definition of "insured" in the Insurance Code provision governing underinsured motorist coverage (§ 11580.2, subd. (b)), the court concluded that the decedent did not fit within any of the statutory categories because her father was the named insured, "[s]he was neither the named insured nor the spouse of the named insured," "she did not live in the same household" as her father, and "she was a pedestrian at the time of the accident, so she was not engaged in an activity related to one of the covered vehicles." (*Berendes*, at p. 576.) Although the decedent had paid an additional premium to be listed and covered as a rated driver under one of her father's policies (*id.* at p. 574), there is no suggestion in the opinion that anyone argued this made her a "named insured" within the meaning of the

15

underinsured motorist statute—and the court made no mention of the *Kotlar* decision.

As 21st Century acknowledges, whether someone is a named insured for purposes of section 11580.2 is "irrelevant to this appeal, because this case has nothing to do with uninsured motorist coverage." Even if it were relevant, however, one federal court applying California law has concluded that someone who is named as an "additional driver" on the declarations page of her parents' car insurance policy *is* a "named insured" within the meaning of section 11580.2, subdivision (b), because this provision simply defines "named insured" to mean " 'the individual or organization named in the declarations of the policy . . . .' " (*Lewis v. Gov't Emples. Ins. Co.* (S.D.Cal. 2020) 458 F.Supp.3d 1214, 1219 (*Lewis*).) We need not decide this issue because it is not before us, but *Lewis* demonstrates that any reliance on the definition of "named insured" in section 11580.2 would not necessarily favor 21st Century.

In *Giovanna*, the second case cited by the trial court, the daughter of the policyholder Giovanna got into an accident while driving a vehicle not covered by the policy. (*Giovanna, supra*, 156 Cal.App.3d at p. 369.) The insurer argued that two policy exclusions for non-covered vehicles applied. (*Id.* at p. 370.) Giovanna argued that one of the exclusions did not apply to the group of persons described as "you" in the policy, which purportedly included her daughter. (*Id.* at p. 370.) The policy defined "you" to mean " 'the "named insured" shown in the Declarations and the spouse if a resident of the same household.' " (*Ibid.*) In arguing that her daughter was a "named insured," Giovanna relied on the following phrase appearing on the declarations page: "Change name insured—add driver No. 2, 3." (*Ibid.*) However, the only person whose name appeared on the policy was Giovanna,

who was identified as the named insured on the declarations page. (*Id.* at p. 371.) Her daughter's name did not appear anywhere on the declarations page or elsewhere in the policy, and the declarations page only described her by sex and birthdate under "Driver Information." (*Ibid.*) The Court of Appeal concluded that the phrase "change named insured—add driver No. 2, 3" merely reflected "the addition of appellant's daughters as *drivers* of the automobile, and appellant's own name change from Naumann to Giovanna." (*Ibid.*) The court ruled that the mere use of this unique phrase on the declarations page did not make the daughter a "named insured." (*Ibid.*) And it further concluded that the second exclusion eliminated coverage for *all* insureds, including named insureds. (*Ibid.*)

*Giovanna* is not helpful here. It did not involve notice of cancellation; it involved the applicability of policy exclusions for non-covered vehicles. In contrast to this case, the policyholder's daughter was not identified by name anywhere in the policy or the declarations page, and the policyholder was relying on an unusual notation on the declarations page to argue that her daughter was nevertheless a named insured. (See *Lewis, supra*, 458 F.Supp.3d at p. 1218 [distinguishing *Giovanna* on the ground that the daughter's name did not appear anywhere on the declarations page or elsewhere in the policy].) Moreover, the *Giovanna* court ultimately found that a policy exclusion eliminated coverage even if the daughter *was* a named insured. And *Giovanna* was decided long before the *Kotlar* court ruled that a named additional insured who is not the actual policyholder qualifies as a "named insured" entitled to notice of cancellation under the Insurance Code. (*Kotlar, supra*, 83 Cal.App.4th at pp. 1121–1122 & fn. 3.)

We therefore conclude that section 662, subdivision (a) required 21st Century to give Tania "advance notice of its intent to cancel the policy, and

its failure to do so nullified the cancellation." (*Kotlar, supra*, 83 Cal.App.4th at p. 1122.)  Accordingly, we need not decide whether the specific terms of the policy separately required 21st Century to give advance notice to Tania.

In its summary judgment motion, 21st Century also argued that it was entitled to judgment on the bad faith claim based on the genuine dispute doctrine.  Because of its ruling that the policy was properly cancelled, the trial court granted summary judgment without deciding whether the genuine dispute doctrine applied.  Even if we were to decide this issue in 21st Century's favor, it would apply only to the bad faith claim and further proceedings would still be required on the contract claim.  We therefore decline to address this argument in the first instance, and instead, remand to the trial court to decide the issue.  (See *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1119–1120; *Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 100–101.)[3]

---

[3]    We deny plaintiffs' motion for judicial notice of the insurance policies at issue in *Berendes* and *Lewis*.  These documents are not relevant or necessary to our decision.

DISPOSITION

The summary judgment order and judgment are reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellants are entitled to recover their costs on appeal.


BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.